JUSTICE HASSELL,
concurring.
I.
I agree with the opinion of the majority. I write separately solely to emphasize certain principles that govern my decision in this case. It is no surprise to anyone that this redistricting, like most, is highly political. The judiciary’s sole function, however, is to determine whether legislative districts created by redistricting comport with the Constitution of Virginia. The judiciary, a separate, co-equal, and *481 apolitical branch of government, must not concern itself with the political implications of the challenged redistricting plan.
Upon consideration of the Constitution of Virginia, relevant case law, and the decisions of the United States Supreme Court, I am compelled to conclude that the plaintiffs in this case failed to establish that race was the predominant factor that the General Assembly used in creating the legislative districts. Additionally, upon comparison of the majority black Senate district that this Court approved in 1992 in Jamerson v. Womack, 244 Va. 506, 423 S.E.2d 180 (1992), with the challenged legislative districts in this case, I can only conclude that the challenged legislative districts in this case do not violate Virginia’s constitutional requirements of compactness and contiguity.
II.
A.
HOUSE DISTRICT 74
Article II, § 6 of the Constitution of Virginia states that “[e]very electoral district shall be composed of contiguous and compact territory.” The circuit court concluded that several Senate and House Districts violate these constitutional requirements. However, the only district that I find troublesome is House District 74 and, therefore, I will focus my discussion solely upon that district.
Without question, House District 74 has a bizarre shape. It has a configuration somewhat similar to a diagram of an “axe handle.” However, a comparison of the record in this case with the record in Jamerson compels me to the inescapable conclusion that House District 74 is constitutionally permissible.
In Jamerson, we acknowledged several principles that we must apply here. We pointed out that legislative determinations of fact upon which the constitutionality of a statute may depend are binding upon this Court unless those determinations are clearly erroneous, arbitrary, or wholly unwarranted. Jamerson, 244 Va. at 509, 423 S.E.2d at 182. We recognized, however, that legislative conclusions based upon findings of fact are subject to judicial review when they are arbitrary and unwarranted. Id. We stated that every statute, including a statute enacting a redistricting plan, has a “strong presumption of validity,” and we held that “reapportionment ‘is, in a sense, political, and necessarily wide discretion is given to the legis *482 lative body.’ ” Id. at 510, 423 S.E.2d at 182 (quoting Brown v. Saunders, 159 Va. 28, 36, 166 S.E. 105, 107 (1932)).
Additionally, in this appeal, just as in Jamerson, the General Assembly must comply with two overarching conditions: Article I, § 2 of the United States Constitution that compels “equal representation for equal numbers of people,” often referred to as “one person, one vote,” and compliance with the mandates of the federal Voting Rights Act, 42 U.S.C. § 1971-74e (2000). Of course, the Voting Rights Act requires that the General Assembly refrain from diluting black group voting strength in a redistricting. Jamerson, 244 Va. at 511, 423 S.E.2d at 183 (citing Wesberry v. Sanders, 376 U.S. 1, 17-18 (1964)).
I also observe, with great conviction, that this Court must be consistent in the application of its precedent. Fairness dictates that the same principles that this Court applied in Jamerson, which resulted in the approval of a black majority Senate district, must be applied in this case.
Applying these principles, I conclude that House District 74 satisfies Virginia’s constitutional requirements of contiguity and compactness. The reasons that justify approval of House District 74 are, in my opinion, more compelling than the reasons that required approval of Senate District 18 in Jamerson. In Jamerson, we rejected the plaintiffs’ challenges to two districts; one of those districts was a Senate district with a majority black voting age population. This district, Senate District 18, extended from rural Halifax County to the City of Portsmouth. Senate District 18 also had a bizarre shape. Just like House District 74 in the present case, the challenged majority black voting district in Jamerson had a configuration that extended into a city which allowed the district to acquire a significant number of black voters. Unlike Senate District 18 that we approved in Jamerson, most of House District 74 has been in existence since 1990, and there is a much stronger community of interest within that district than Senate District 18. Furthermore, House District 74, which was created as a majority black district in 1991, is substantially similar today to its 1991 configuration, and contains 98.3% of the 1991 district which was approved by many of the legislator-plaintiffs in this case.
*483 B.
Validity of Plaintiffs’ Racial Challenge
The litigants agree that race must be a factor in the redistricting because of the mandate of the federal Voting Rights Act. However, race must not be the predominant factor. As the Supreme Court stated in Easley v. Cromartie, 532 U.S. 234, 241-42 (2001):
“The Court has specified that those who claim that a legislature has improperly used race as a criterion, in order, for example, to create a majority-minority district, must show at a minimum that the ‘legislature subordinated traditional race-neutral districting principles ... to racial considerations.’ [Miller v. Johnson, 515 U.S. 900, 916 (1995)]. Race must not simply have been ‘a motivation for the drawing of a majority minority district,’ Bush v. Vera, 517 U.S. 952, 959 (1996) (O’CONNOR, J., principal opinion) (emphasis in original), but ‘the “predominant factor” motivating the legislature’s districting decision,’ Cromartie, 526 U.S. at 547 (quoting Miller, supra, at 916) (emphasis added). Plaintiffs must show that a facially neutral law ‘ “is ‘unexplainable on grounds other than race.’ ” ’ [Cromartie, 526 U.S. at 546].”
The Supreme Court also made the following observation in Easley v. Cromartie, that is pertinent here:
“The Court also has made clear that the underlying districting decision is one that ordinarily falls within a legislature’s sphere of competence. Miller, 515 U.S. at 915. Hence, the legislature ‘must have discretion to exercise the political judgment necessary to balance competing interests,’ ibid., and courts must ‘exercise extraordinary caution in adjudicating claims that a State has drawn district lines on the basis of race,’ id., at 916 (emphasis added). Caution is especially appropriate in this case, where the State has articulated a legitimate political explanation for its districting decision, and the voting population is one in which race and political affiliation are highly correlated. See Cromartie, supra, 526 U.S. at 551-[52] (noting that ‘evidence that blacks constitute even a supermajority in one congressional district while amounting to less than a plurality in a neighboring district will not, by itself, suffice to prove that a jurisdiction was motivated by race in *484 drawing its district lines when the evidence also shows a high correlation between race and party preference’).”
Id. at 242.
Upon application of these principles to this case, I am persuaded that the plaintiffs failed to establish that the General Assembly used race as the predominant factor in the redistricting plan. Simply stated, the plaintiffs failed to prove their case as required by law. The undisputed evidence in the record before this Court is that in Virginia there is a high correlation between race and politics. The plaintiffs, therefore, were required to introduce, in evidence, an alternative plan that showed that the General Assembly could have achieved its political and traditional districting objectives without the specific racial configurations that the General Assembly actually used. The plaintiffs, however, failed to present an alternative plan that complied with the criteria required by Easley v. Cromartie.
Without question, this Court has a constitutional duty to invalidate a redistricting plan if the evidence demonstrates that race was the predominant factor in the creation of legislative districts. However, plaintiffs who challenge the redistricting plan have an obligation to prove their case, and in this instance the plaintiffs failed to satisfy that obligation. The failure to satisfy this obligation is amply demonstrated by the testimony of plaintiffs’ own expert witness, who testified that he neglected to consider certain basic factors that are highly relevant in any redistricting plan, including the factor of political incumbency. Dr. Allan J. Lichtman testified as follows:
“Q: If you pick a district to study because it is black and compare it only to bordering districts that are white, wouldn’t you expect to find that blacks are more heavily represented inside?
“A: If you are drawing the district based on race, yes. If you are not drawing the district based on race, not necessarily. It could be that there are all kinds of borders even though the district is less heavily black that they share, that both have heavy concentrations of blacks or heavy concentrations of whites, and you wouldn’t find that kind of consistent pattern. So, no, it doesn’t follow.
“Q: Well, let me ask you this: Did you look at the borders that you used to determine whether on the other side there were Republican incumbents or Democratic incumbents?
*485 “A: No.
“Q: And you don’t think that would make any difference in your analysis?
“A: I tested the proposition that the lines were drawn on a political basis. I looked at the competitiveness of those districts. I did not look at the identity of the incumbents or what role they may or may not have played. I didn’t see anything about that in any of the material presented by the State.”
The plaintiffs’ failure to establish that the General Assembly relied predominantly upon race rather than basic political considerations, such as incumbency, is fatal to the plaintiffs’ case. See Easley v. Cromartie, 532 U.S. at 241-42.